# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**KENNETH EDWARD SMALLWOOD,**

    **Plaintiff,**

  v.                                    Case No. 2:16-cv-1166
                                              CHIEF JUDGE EDMUND A. SARGUS, JR.

**COMMISSIONER OF SOCIAL**          Magistrate Judge Chelsey M. Vascura

**SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Kenneth Edward Smallwood ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI"). This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 10), Defendant's Memorandum in Opposition (ECF No. 16), Plaintiff's Reply to Defendant's Memorandum in Opposition (ECF No. 17), and the administrative record (ECF No. 9). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** the Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

### I.    BACKGROUND

Plaintiff protectively filed his application for SSI on December 31, 2013, and alleges that he became disabled on June 30, 2012. He later amended his alleged disability onset date to December 31, 2013. On February 8, 2016, following initial administrative denials of his claim, Plaintiff was given a hearing before Administrative Law Judge Jason C. Earnhart (the "ALJ") (ECF No. 9-2, at PAGEID# 80-118.) At the hearing, Plaintiff, represented by counsel, appeared and testified. Vocational Expert Richard Astrike (the "VE") also appeared and testified. On March 15, 2016, the

ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id*. at PAGEID# 59-73.)

On November 2, 2016, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (*Id*. at PAGEID# 46-49.) Plaintiff then timely commenced the instant action. (ECF No. 1.)

In his Statement of Errors, Plaintiff raises a single contention of error. Specifically, Plaintiff maintains that the ALJ erred in relying upon the VE's testimony that he was capable of performing his past relevant work. The undersigned's discussion of the record evidence focuses on evidence relevant to consideration of this contention of error.

## II. RELEVANT HEARING TESTIMONY

### A. Plaintiff's Testimony

During the February 2018 hearing, Plaintiff testified that he last worked in 2013 and said that since the alleged onset of his disability at the end of 2013, he had "junked," which he explained meant taking stuff to the scrapyard. (*Id*. at PAGEID# 89).

Plaintiff indicated that it had been "a couple years" since he had worked as a manager at Cleveland Dreamers. (*Id*.) When asked what he did, Plaintiff said that as the manager, he would "sit down in a chair . . . or [go] into the office and sit back there and laid . . . [his] head on the desk and rested for a little bit then [he'd] come out and walk around and check and make sure everybody was doing what they were supposed to do." (*Id*. at PAGEID# 93-94). Plaintiff stated that he worked eight-hour shifts and that during those shifts, he would get up and walk around because if he did not, he would "be stiff and couldn't move." (*Id*. at PAGEID# 94). Plaintiff elaborated that he "would sit for a while and then . . . get up and then . . . walk around and check things and make sure everybody was doing and then . . . go back and sit down and … play a video game they had

there." (*Id.*) He added that he sometimes sat at the bar, but also would go to his office where he could stretch out and be left alone. (*Id.* at PAGEID# 95.) He further explained that he would sit for "for a while" and then "get up and move around" so that he did not become stiff. (*Id.* at PAGEID# 95.) Plaintiff said that he did not have to do much lifting. He indicated that the job ended when the business "wanted new management." (*Id.*)

Plaintiff testified that his job "was to make sure everybody did their job and then at the end of the night that the bar was closed and everybody went home." (*Id.* at PAGEID# 105.) By way of example, Plaintiff said he would make sure that people were paying for their drinks instead of the bartender giving them away.

When Plaintiff's counsel asked Plaintiff why he could not return to his former job, Plaintiff responded, "Well, I don't know if I couldn't do it." (*Id.* at PAGEID# 101.) He added that the job "drove him crazy," and explained "It was a go-go bar and I had to listen to 20 different crazy women every day." (*Id.*) He said that it was a lot of hassle to put up with everyone's problems. Plaintiff indicated that his old job was "not something [he] want[s]," explaining that "listening to music all night long . . . [and] [c]razy women that were driving [him] nuts." (*Id.* at PAGEID# 103-04.) He said "just having to put up with that . . . was just a lot of stress on [him]." Upon later questioning, Plaintiff reiterated that his old position is "not what [he] want[s] to do" because he does not "want to be in that scene anymore" because "it's just not for [him]." (*Id.* at PAGEID# 107.)

From an exertional standpoint, Plaintiff said that he not been required to do much lifting with that job and did not identify any reason that he could not physically perform the demands of his past manager job at Cleveland Dreamers.

3

**B.     Testimony of the Vocational Expert**

When asked to classify Plaintiff's past work, the VE testified as follows:

> Your honor, he's a – the DOT code is retail manager. It's, it's skilled, SVP 7, and light. I think he did it at semi-skilled, I don't think he did it long enough to learn anything that would be – raise it to a skill level. So, it's 185.167-046. And I think he did it at the sedentary level. As long as you have the option to sit as you need to, I think it's classified as sedentary. So those would be two deviations from the DOT your honor.

(*Id*. at PAGEID# 111-112.)

When asked to classify the Specific Vocational Preparation ("SVP") level[1] at which he thought Plaintiff performed the job, the VE opined that it was a level four, reasoning as follows: "I think it's a 4. The bartender job in the DOT is an SVP 3. I think it was more than that, but less than the manager. So I think it's a 4. (*Id*. at PAGEID# 112.) The VE further opined that Plaintiff performed his job at the sedentary level of exertion. (*Id*.)

The ALJ then asked the VE to consider a hypothetical individual with Plaintiff's vocational profile and the residual functional capacity ("RFC") the ALJ ultimately assessed. The VE testified that such an individual could perform Plaintiff's past work as a manager at Cleveland Dreamers as he actually performed the position. The VE concluded that the individual could not, however, perform that position as it is generally performed, explaining that the individual lacked the background, training, and skill to perform the job. The VE stated that his testimony was consistent with the DOT and also the companion publication, the Selected Characteristics of Occupations ("SCO").

---

[1] Under the Dictionary of Occupational Titles ("DOT"), the SVP is defined as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." Appendix C to the DOT - Components of the Definition Trailer, 1991 WL 688702.

On cross-examination, Plaintiff's attorney questioned the VE about one of the DOT deviations he identified, namely, the VE's opinion that Plaintiff performed the position at the sedentary level as contrasted with the light-level at which the position is generally performed. Plaintiff's attorney directed the VE's attention to Exhibit 2E, the Adult Disability Report Form that Plaintiff completed in which Plaintiff indicated that in his manager position, he walked for three hours per day, stood for three hours per day, and sat for two hours per day. (*Id*. at PAGEID# 114, 210.) The VE stated that this delineation would constitute light work that an individual limited to the sedentary level of exertion could not perform. The ALJ then pointed out and the VE agreed that the delineation reflected in Exhibit 2E was not consistent with the testimony Plaintiff had just offered concerning the exertional demands of his prior position.

### III. RELEVANT RECORD EVIDENCE

On the Exhibit 2E Adult Disability Report Form that Plaintiff completed, Plaintiff represented that he worked in the manager position from January 2010 until July 2012 and earned $300.00 per week. (ECF No. 9-6, PAGEID# 207-215.) He said that his job involved stocking drinks and serving customers. Plaintiff indicated that the job did not require him to use machines, tools, or equipment; use technical knowledge or skills; or to write complete reports or perform similar duties. (*Id*.) He further indicated that he did not have to supervise people and that he was not a "lead worker." (*Id*.) From an exertional standpoint, as set forth above, Plaintiff indicated that he walked for three hours per day, stood for three hours per day, and sat for two hours per day. He further represented that the job did not require any lifting and that the heaviest weight he ever lifted was less than ten pounds.

Plaintiff's earnings records reveal earnings of $2,600.00 for 2010; earnings of $15,600.00 for both 2011 and 2012; and earnings of $11,965.00 for 2013. (ECF No. 9-5, PAGEID# 200.)

## IV.    THE ADMINISTRATIVE DECISION

The ALJ found that Plaintiff had not been under a disability within the meaning of the Social Security Act since December 31, 2013, the amended application date. (ECF No. 9-2 at PAGEID# 59.) At step one of the sequential evaluation process,[2] the ALJ deferred a finding on the issue of Plaintiff's substantial gainful activity since the application date, stating that a finding on the issue could be made at a later step in the sequential evaluation. (*Id*. at PAGEID# 61.) The ALJ found that Plaintiff had the following severe impairments: obesity, diabetes, hypertension, degenerative disc disease of the lumbar spine with sciatica, stage 2-3 kidney disease, and a history of hernia with surgical repair. (*Id*.) The ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*. at PAGEID# 71.)

At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that he … can frequently stoop, balance, kneel,

---

[2]  Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. See 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.  Is the claimant engaged in substantial gainful activity?
2.  Does the claimant suffer from one or more severe impairments?
3.  Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.  Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5.  Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

>           crouch, and climb ramps or stairs. He can tolerate frequent exposure to
>           hazards such as dangerous moving machinery and unprotected heights. He
>           can occasionally crawl or operate foot controls. He cannot climb ladders,
>           ropes, or scaffolds.

(*Id*. at PAGEID# 64.) The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms but found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms were not entirely credible. (*Id*. at PAGEID# 66.) The ALJ opined that Plaintiff's "motivation to work seems to have been less than optimal, with only three years of reported substantial gainful activity wages since 1993 and 15 years with no wages at all . . .," adding that "[s]uch a work and earnings history certainly does not support the proposition that, but for the claimant's alleged impairments, he would be working and engaging in substantial gainful activity." (*Id*. at PAGEID# 71-72.) The ALJ explained that, in assessing Plaintiff's physical limitations, he generally adopted the opinion of the State Agency physicians. Further, the ALJ noted that the assessment was consistent with and well supported by the record evidence. (*Id*. at PAGEID# 72.) Taking all of this into account, the ALJ concluded that Plaintiff was reasonably limited to light exertional work with the postural, environmental, and foot control restrictions set forth in the RFC, as well as the identified restrictions on lifting, carrying, pushing, and pulling. (*Id*.)

Relying on the VE's testimony and Plaintiff's testimony and representations in his Adult Disability Report Form, the ALJ concluded that Plaintiff was capable of performing his past relevant work as a retail manager because the work did not require the performance of work-related activities precluded by his RFC. (*Id*. at PAGEID #72.) The ALJ reasoned as follows:

>           [The VE] identified the claimant's past work as manager of a strip club as
>   a skilled, light exertional, retail manager, DOT number 185.167-046. He stated
>   that the claimant performed his job as it is generally performed in the economy
>   and described in the Dictionary of Occupational Titles (DOT), except that he
>   performed it at a sedentary semiskilled level. [The VE] testified that, if the

claimant were limited as set forth above, he would be capable of performing the job of retail manager as he performed it.

[The VE's] analysis is accepted as it is not contradicted and his sources of data are considered reliable. His testimony was consistent with the Dictionary of Occupational Titles. The record reflects that the work described by [the VE] constituted the claimant's past relevant work because each job was done within the last 15 years, each job lasted long enough for the claimant to learn how to do it, and the wages from each job were indicative of substantial gainful activity.

The claimant's testimony that he could not return to his past work because he had to listen to 20 crazy women every day and because the bar business was "not for him" provides no objective basis to preclude him from the performance of his past work, except for his personal preference. In deciding whether an individual is disabled, the following factors are not permitted to be considered: inability to get work; lack of work in the local area; hiring practices of employers; cyclical economic conditions; whether job openings exist; whether the individual would actually be hired; and the claimant's preference for a particular type of job (20 CFR § 404.1566 and § 416.966).

The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act.

(*Id*. at PAGEID# 73).

### V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)) *cert. denied sub nom. Paper, Allied-Indus., Chem.& Energy Workers Int'l Union v. TNS, Inc.*, 537 U.S. 1106 (2003). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

## VI. ANALYSIS

As set forth above, for his sole contention of error, Plaintiff maintains that the ALJ erred in relying on the VE's testimony to conclude that he is capable of performing his past relevant work as a retail manager. (Pl.'s Statement of Errors, ECF No. 10 at PAGEID# 750-761; Pl.'s Reply, ECF No. 17 at PAGEID#801-807.) According to Plaintiff, his manager position at Cleveland Dreamers does not constitute past relevant work as contemplated under the regulations because he did not perform it for a sufficient duration. In support of this assertion, Plaintiff points out that the VE testified that the DOT reflects that a retail manager position has an SVP level of 7, meaning that it requires a duration of between 2 and 4 years to acquire the skills and knowledge for average performance. Plaintiff concludes that because he performed the position "for at most a period of nineteen months," his work would not qualify as past relevant work because he did not perform it long enough to learn the job as it is generally performed. (Pl.'s Statement of Errors, ECF No. 10 at PAGEID# 757-758.)

Plaintiff acknowledges that the VE testified that he actually performed the position at the SVP level of 4 (which requires a duration of only 3-6 months to acquire sufficient skills and knowledge), but posits that the ALJ erred in relying on this testimony because it conflicts with the DOT and the ALJ failed to elicit a reasonable explanation for the conflict. Plaintiff submits that the VE's offered explanation, that the Plaintiff did not perform the job long enough to learn enough to raise it to a skill level, "is so patently deficient that the Commissioner could never find it to be a reasonable explanation for the conflict to support relying on the vocational expert testimony as opposed to the DOT." (*Id.* at PAGEID# 759.)

The undersigned finds Plaintiff's sole contention of error to be without merit. As a threshold matter, "the claimant bears the burden of proving . . . the fact that [he or] she is precluded from performing [his or] her past relevant work . . . ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (same). To satisfy this burden, a claimant must show that he or she cannot perform his or her past relevant work as "actually performed" and as "generally required by employers throughout the national economy." *See* SSR 82–61, 1982 WL 31387, at *2 (1982); *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 548 (6th Cir. 2002) ("[The claimant] must prove that she was unable to perform her past relevant work *and* that she is unable to return to her former type of work as generally performed." (emphasis added) (citations omitted)). The regulations define "past relevant work" as "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. § 404.1560(b)(1). The regulations also offer the following guidance regarding the determination of whether a claimant is able to perform his or her past relevant work:

> Determining whether you can do your past relevant work. We will ask you for information about work you have done in the past. We may also ask other people who know about your work. (*See* § 404.1565(b).) We may use the services of vocational experts or vocational specialists, or other resources, such as the

> "Dictionary of Occupational Titles" and its companion volumes and supplements, published by the Department of Labor, to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity. A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy. Such evidence may be helpful in supplementing or evaluating the accuracy of the claimant's description of his past work. In addition, a vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy.

20 C.F.R. § 404.1560(b)(2). Thus, although VE testimony may constitute substantial evidence supporting the conclusion that a claimant can perform his or her past relevant work, an ALJ is not required to consult a VE. *Id.*; *see also Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010) (noting that in assessing whether the claimant was capable of performing her past relevant work, "the ALJ was not required to solicit testimony from a VE in reaching his conclusion" (citations omitted)).

Plaintiff correctly points out that where a VE proffers evidence at an administrative hearing in the form of expert testimony, "the Social Security Administration imposes an affirmative duty on ALJs to ask if the evidence they have provided 'conflicts with the information provided in the DOT.'" *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009) (quoting SSR 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000)). Where an unresolved conflict is identified, an ALJ is required to "elicit a reasonable explanation for the conflict before relying on the [VE's testimony as] evidence to support a determination or decision about whether the claimant is disabled." SSR 00-4p, 2000 WL 1898704, at *2. However, where an ALJ inquires whether the VE's testimony is consistent with the DOT and is given an affirmative response, "the ALJ [has] met [his or] her obligation under SSR 00–4p, and there [is] no error relying on the positions the VE offered." *Kyle*

*v. Comm'r of Soc. Sec.*, 609 F.3d 847, 858 (6th Cir. 2010). Rather, the obligation to investigate the accuracy of the VE's testimony "falls to the plaintiff's counsel, who had the opportunity to cross-examine the VE and bring out any conflicts with the DOT." *Beinlich v. Comm'r of Soc. Sec.*, 345 F. App'x 163, 168 (6th Cir. 2009) (citations omitted); *Louden v. Comm'r of Soc. Sec.*, 507 F. App'x 497, 499 (6th Cir. 2012) (holding VE's testimony constituted substantial evidence that the claimant could provide past work where the claimant's "attorney had the opportunity, but failed to cross-examine the vocational expert regarding her position that her testimony was consistent with specific provisions of the Dictionary of Occupational Titles"); *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir. 2006) ("Nothing in S.S.R. 00–4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct. . . . Because [the claimant's counsel] did not bring the conflict to the attention of the ALJ, the ALJ did not need to explain how the conflict was resolved.").

Applying the foregoing authority, the undersigned concludes that Plaintiff's sole contention of error fails to persuade for a number of reasons. To begin, the undersigned concludes that the ALJ did not err in relying on the DOT's testimony because the VE's testimony does not contain an apparent unresolved conflict as contemplated under SSR 00-4p. Second, to the extent any such conflict exists, the VE's testimony still constitutes substantial evidence that Plaintiff can perform his past relevant work because Plaintiff's counsel failed to cross-examine the VE with respect to his representation that his testimony was consistent with the DOT. Finally, even assuming *arguendo* that the ALJ erred in relying upon the VE's testimony, such error is harmless because substantial evidence remains to support the ALJ's determination that Plaintiff failed to satisfy his burden to show that he could perform his past work. The undersigned explains these alternative bases for rejecting Plaintiff's sole contention of error in turn.

A.  **The VE's testimony does not contain an apparent unresolved conflict as contemplated under SSR 00-4p.**

According to Plaintiff, the VE's testimony that Plaintiff actually performed the position of retail manager at the SVP level of 4 conflicts with the DOT because as the VE testified, the DOT reflects that the manager position has an SVP level of 7. The undersigned disagrees. The SVP level corresponding with how Plaintiff actually performed the job and the SVP level of the job as typically performed are two *separate* inquiries. That the answer to these *independent* inquiries yields a different answer does not constitute a conflict as contemplated under SSR 00-4p. *Cf. Kyle,* 609 F.3d at 853, n. 9 ("The type of conflict the SSR . . . 00–4p inquiry anticipates is not between the type of job claimant performed in the past and that which the VE opines his skills can transfer to in the future, but a conflict between the type of jobs the claimant has been determined by [a VE] to be able to perform and the DOT description of the capabilities and skills required to do the job.").

In analyzing this very issue, the United States Court of Appeals for the Second Circuit stated that "we know of no circuits that have found a 'conflict' in a discrepancy between, on one hand, the expert's description of the job that the claimant actually performed, and the [DOT's] description of the job as it is performed in the national economy." *Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d Cir. 2003). The *Jasinski* Court rejected the claimant's assertion that the VE's testimony conflicted with the DOT where the VE testified that the DOT reflected that the at-issue position was performed at one exertional level, but that the claimant had actually performed it at a different exertional level. *Id*. at 184-85. The Second Circuit reasoned as follows:

> [I]n the fourth stage of the SSI inquiry, the claimant has the burden to show an inability to return to her previous specific job and an inability to perform her past relevant work generally. *See Jock v. Harris*, 651 F.2d 133, 135 (2d Cir. 1981); *see also* SSR 82–62, 1982 WL 31386, at *3 (Past relevant work in the fourth stage of the inquiry includes "the specific job a claimant performed or the same kind of work as it is customarily performed throughout the economy."). This inquiry requires separate evaluations of the previous specific job and the job as it is generally

> performed. Whereas the Dictionary describes jobs as they are generally performed, an expert is often called upon to explain the requirements of particular jobs, and as such, his deviations from the Dictionary in such testimony do not actually "conflict" with the Dictionary. Many specific jobs differ from those jobs as they are generally performed, and the expert may identify those unique aspects without contradicting the Dictionary.
>
> In this case, the expert testified about [the claimant's] past work as a teacher's aide at Sacred Heart Catholic School. The ALJ asked specifically about that job, and the expert responded: "Teacher's aide is DOT number 249.367–074, and that's light exertion, semi-skilled employment, and she described it being between sedentary to light. She indicated she may need to pick up a child, but that was on occasion. So I would . . . put it in between the sedentary and light exertion [categories]." The ALJ later asked whether [the claimant] was able "to do any of her past relevant work," and the expert replied that "the teacher's aide work would . . . be allowed, with the exception that she would not be able to pick up a child. But that sounded like it was based on her discretion, and it's not generally something that she was required to do." Again, the expert answered on the basis of [the claimant's] description of her work as a Sacred Heart Catholic teacher's aide, and not on the basis of the job's requirements as it is performed nationally. Therefore, we find that the expert's testimony did not conflict with the [DOT].

*Id*. at 185.

This undersigned agrees with other trial courts within the Sixth Circuit considering this issue that the *Jasinksi* Court's analysis persuasive. *See, e.g.*, *Isaac v. Comm'r of Soc. Sec.*, No. 1:16-cv-1345, 2017 WL 3705902, at *9 (N.D. Ohio July 28, 2017) ("Here, because the VE found that [the claimant] could perform his past work as actually performed, any conflict with the DOT regarding how the job is generally performed is irrelevant."); *Spivey v. Comm'r of Soc. Sec.*, Case No. 12-cv-10207, 2014 WL 1943663 (E.D. Mich. May 9, 2014); *Medendorp v. Comm'r of Soc. Sec.*, No. 1:11-cv-266, 2012 WL 991625, at *2 (W.D. Mich. Mar. 23, 2012).

In sum, the undersigned concludes that Plaintiff's sole contention of error lacks merit because it relies upon the faulty premise that the VE's testimony conflicts with the DOT.

**B. Even if a conflict exists, the VE's testimony constitutes substantial evidence that Plaintiff can perform is past relevant work.**

As set forth above, Plaintiff maintains that the VE's offered explanation for concluding that he performed the position at SVP level 4 "is so patently deficient that the Commissioner could never find it to be a reasonable explanation for the conflict to support relying on the vocational expert testimony as opposed to the DOT." (Pl.s' Statement of Errors, ECF No. 10 at PAGEID# 759.) Plaintiff specifically takes issue with the following statement by the VE: "I think he did it at semi-skilled, I don't think he did it long enough to learn anything that would be – raise it to a skill level."

The undersigned agrees that the VE erred to the extent he based his conclusion that Plaintiff performed the manager position at an SVP level 4 because of the length of time he performed the job. But review of the hearing transcript in its entirety reflects that this is not the case. Rather, when asked to classify the SVP level at which Plaintiff performed the position, the VE responded as follows: "I think it's a 4. The bartender job in the DOT is an SVP 3. I think it was more than that, but less than the manager. So I think it's a 4. (*Id*. at PAGEID# 112.) This response shows that the VE was considering the actual activities Plaintiff testified that he performed rather than the length of time he performed the job. Consistently, the VE's testimony demonstrates that he relied upon Plaintiff's testimony to conclude that he actually performed the manager position at the sedentary exertional level rather than the light level the DOT specified. (*See* ECF No. 9-2 at PAGEID## 111-12, 114.)

Regardless, because the ALJ asked the VE whether his testimony conflicts with the VE and the VE replied that it did not, the ALJ did not err in relying on the VE's testimony. *Kyle*, 609 F.3d at 858. Rather, the Plaintiff's counsel was responsible for investigating the VE's testimony through cross-examination. *See Beinlich*, 345 F. App'x at168; *Louden*, 507 F. App'x at 499. Notably,

15

Plaintiff's counsel explored the VE's testimony that Plaintiff performed the manager position at a different exertional level than the DOT specified, (*see* ECF No. 9-2 at PAGEID# 114), but he failed to likewise inquire about the VE's testimony that Plaintiff performed the position at SVP level 4. Under these circumstances, to the extent any such conflict relating to the SVP level exists, "the ALJ did not need to explain how the conflict was resolved." *Martin*, 170 F. App'x 374.

For this independent reason, the undersigned concludes that the ALJ did not err in relying upon the VE's testimony to conclude that Plaintiff could perform his past relevant work.

**C.    Substantial evidence supports that ALJ's determination even in the absence of the VE's testimony.**

Finally, the undersigned concludes that even assuming *arguendo* that the ALJ erred in relying upon the VE's testimony, such error is harmless because substantial evidence remains to support ALJ's determination that Plaintiff failed to satisfy his burden to show that he could perform his past work. As set forth above, an ALJ is not required to consult the VE and may rely upon the claimant's statements about his past work. *See* 20 C.F.R. § 404.1560(b)(2); *Wright-Hines*, 597 F.3d at 395 (6th Cir. 2010).

Here, the ALJ considered the Exhibit 2E Adult Disability Report Form that Plaintiff completed in which he described his duties as stocking drinks and serving customers and in which he further represented that he did not supervise people and that the job did not require him to use machines, tools, or equipment; use technical knowledge or skills; or to write complete reports or perform similar duties. The ALJ also considered Plaintiff's hearing testimony that he did not "know if [he] couldn't do it," (ECF No. 9-2 at PAGEID#101), in response to his counsel's inquiry as to why he could not return to his former job, as well as Plaintiff's explanation that his old job was just not something he wanted because he did not like that scene.

In explaining his bases for concluding that Plaintiff had failed to satisfy his burden to show that he could not perform his past work, the ALJ specifically discussed Plaintiff's testimony and concluded that Plaintiff had "provide[d] no objective basis to preclude him from the performance of past work, except for his personal preference." (*Id*. at PAGEID# 72.) Citing the regulations, the ALJ determined that Plaintiff's personal preference for a particular type of job was insufficient to carry his burden. (*Id*. at PAGEID# 72-73.) The ALJ correctly noted that a claimant's personal preference about a line of work is not sufficient to satisfy the claimant's burden. *See* 20 C.F.R. § 416.966(c)(8); *cf. Wilson v. Comm'r of Soc. Sec*., 280 F. App'x 456, 459-60 (6th Cir. 2008) (upholding the ALJ's conclusion that the claimant could perform her past work where the ALJ probed the claimant about her past work and why she could not return to it, but the claimant "never suggested that she could not return to work as a result of mental or psychological limitations"). Thus, the ALJ reasonably relied upon Plaintiff's testimony and his responses to the Adult Disability Report Form to conclude that he had not shown that he could not perform his past work. The undersigned therefore concludes that substantial evidence supports the ALJ's determination even in the absence of the VE's testimony and recommends that Plaintiff's sole contention of error be overruled for this alternative reason.

## VII. DISPOSITION

In sum, from a review of the record as a whole, the undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiffs' Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## VIII. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

*/s/ Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE